IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02119-WYD-CBS

CHARLES WILLIAM FLETCHER III,

      Applicant,

v.

STEVEN HARTLEY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER OF DISMISSAL

---

      Applicant Charles William Fletcher III is a prisoner in the custody of the Colorado

Department of Corrections at the Sterling Correctional Facility in Sterling, Colorado.  On

September 23, 2009, he filed *pro se* an [Amended] Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Application") challenging his Colorado state

conviction in Arapahoe County District Court, Case No. 99CR1397.  The Application has

been fully briefed by the parties.

      I must construe the Application and other papers filed by Mr. Fletcher liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519,

520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I

should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After

reviewing the entire file and the state court record, I find that an evidentiary hearing is

not necessary.  For the reasons stated below, the Application will be denied, and the

action will be dismissed.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Fletcher was charged in Arapahoe County District Court with multiple

offenses arising out of a robbery and shooting that occurred on May 19, 1999.  (State

Court Record ("R.") Vol. 1 at 43-52, 74, Vol. 10 at 139).  The evidence at Mr. Fletcher's

trial was summarized accurately by the Colorado Court of Appeals:

> The manager of a grocery store was in the process of
> closing for the evening when defendant and another man
> entered the store wearing masks and carrying guns.
> Defendant grabbed the manager, held a gun to his head,
> and instructed him to open the safe and give him the money.
> The manager attempted to open the safe, but was only able
> to open the top compartment.  The manager gave defendant
> the money from that compartment, and defendant ordered
> him to open the bottom compartment.  The manager told
> defendant he was unable to open the bottom compartment
> because it had a fifteen-minute delay.  Defendant became
> angry and shot the manager in the calf.
>
> Defendant then began yelling at the manager that he was
> serious and threatened to kill him.  The manager pleaded for
> his life and told defendant he had a family.  The manager
> again attempted to open the bottom compartment, but was
> unable to do so.  Defendant then shot the manager in the
> thigh, and defendant and the other man fled the store.
>
> As the two men were fleeing the store, a second victim was
> parking his car in the lot behind the store.  As the victim was
> getting out of his car, a car pulled up next to him, and a
> masked man got out of the passenger door and shot the
> victim in the arm.  A second masked man exited the car, and
> the men fled the parking lot in a different car.

*People v. Fletcher*, No. 03CA0182 (Colo. App. Aug. 10, 2006) (unpublished opinion) (Pre-Answer Resp. Ex. E).

After a five-day jury trial, Mr. Fletcher was convicted of attempted second degree murder, first degree assault, second degree kidnapping, two counts of aggravated robbery, two counts of second degree assault, conspiracy to commit aggravated robbery, and accessory to aggravated robbery.  On September 12, 2000, prior to sentencing, Mr. Fletcher filed a Motion for New Trial pursuant to Colo. R. Crim. P. 35(c), asserting juror misconduct and that the trial judge had limited jury deliberations (R. Vol. 1 at 208-213), which the trial court denied from the bench on April 13, 2001, after an evidentiary hearing.  (Pre-Answer Resp. Ex. A at 10; R. Vol. 5 at 44).  Mr. Fletcher then filed a Motion for New Trial pursuant to Colo. R. Crim. P. 33(a) on September 6, 2001, asserting that the trial court had failed to properly instruct the jurors.  (R. Vol. 1 at 235-237).  I have not located any entry in the record indicating that the trial court ruled on the Rule 33(a) motion.

After finding that Mr. Fletcher had eight prior convictions supporting eight counts of habitual criminal, the trial court sentenced him to 320 years in the Colorado Department of Corrections on December 9, 2002.

On February 25, 2003, Mr. Fletcher filed a direct appeal challenging his conviction and sentence on numerous grounds.  (R. Vol. 2 at 300-02; Pre-Answer Resp. Ex. C).  The Colorado Court of Appeals affirmed the judgment, but reversed certain aspects of the sentence and remanded for resentencing.  *Fletcher*, No. 03CA0182 (Pre-

Answer Resp. Ex. E).  The Colorado Supreme Court denied Mr. Fletcher's petition for certiorari review on June 28, 2007.  (R. Vol. 2 at 416).

On November 14, 2007, Mr. Fletcher filed a motion for sentence reconsideration pursuant to Colo. R. Crim. P. 35(b), which the trial court denied on November 20, 2007. (R. Vol. 2 at 422-26).  Mr. Fletcher filed a second motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c) on February 19, 2008, asserting seven claims (R. Vol. 2 at 454-476), and filed a supplemental addendum thereto on May 20, 2008, which sought an abbreviated proportionality review.  (R. Vol. 2 at 479-481).  The trial court denied the supplemental addendum on June 26, 2008, without addressing the seven claims raised in the Rule 35(c) motion.  (R. Vol. 2 at 482-83).  On January 9, 2009, in response to Mr. Fletcher's Motion for Request of Status (R. Vol. 2 at 493-94), the trial court ruled that the June 26 order had denied the Rule 35(c) motion.  (Application at 10-11).  Mr. Fletcher appealed the denial of his Rule 35(c) motion, and the Colorado Court of Appeals dismissed the appeal with prejudice as untimely on March 16, 2009.  (R. Vol. 2 at 505).  The Colorado Supreme Court denied Mr. Fletcher's petition for certiorari on July 22, 2009.  (R. Vol. 2 at 506).

Mr. Fletcher filed his Application in this Court on September 23, 2009, asserting the following eight claims:

(1)     The Colorado Court of Appeals erred in dismissing his appeal of the denial of his February 19, 2008, Rule 35(c) motion and addendum thereto on the basis that the appeal was time-barred.

(2)     His Sixth Amendment right to be tried by an impartial jury was violated by a juror's failure to answer questions truthfully during jury selection.

4

(3)     His rights under the Uniform Mandatory Disposition of Detainers Act (UMDDA), Colo. Rev. Stat. § 16-14-102, were violated because he did not receive notice of untried charges.

(4)     His Sixth Amendment rights were violated by a juror's "nodding off" during trial.

(5)     The trial court abused its discretion and committed reversible error by failing to order a new trial or mistrial after learning that one of the jurors had asked the other jurors to join her in a prayer during deliberations.

(6)     The trial court committed reversible constitutional error when it imposed a time deadline for the completion of jury deliberations.

(7)     The county court lacked jurisdiction to preside over his sentencing.

(8)     His trial counsel provided ineffective assistance by not advancing a reasonable doubt defense.

On September 30, 2009, Magistrate Judge Boyd N. Boland ordered Respondents to file a Pre-Answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  After receiving an extension of time, Respondents filed their Pre-Answer Response on November 19, 2009, conceding that the Application was timely and that claim four was exhausted, but arguing that Mr. Fletcher had failed to exhaust his state court remedies for claims one, two, three, five, six, seven, and eight.  Mr. Fletcher filed a reply to the Pre-Answer Response on December 11, 2009.  Upon instruction from Magistrate Judge Boland, Respondents filed a response to Mr. Fletcher's reply on February 8, 2010, and Mr. Fletcher filed a reply to that response on February 22, 2010.

5

On April 19, 2010, District Judge Philip A. Brimmer issued an Order to Draw in Part and to Dismiss in Part.  After noting that Respondents conceded the timeliness of Mr. Fletcher's Application under 28 U.S.C. § 2244(d), Judge Brimmer proceeded to address the merits of claims one, three, and seven pursuant to 28 U.S.C. § 2254(b)(2).  Judge Brimmer dismissed claim one on the ground that it was not cognizable under § 2254 since it did not challenge Mr. Fletcher's conviction or sentence, but, rather, challenged the state court's postconviction procedure.  *See Beeman v. Ortiz*, 161 Fed. Appx. 767, 769 , 2006 WL 11322 (10th Cir. Jan. 3, 2006) (unpublished).  He dismissed claim three because it alleged a violation of the UMDDA, which is a state statute, and § 2254 provides relief only for violations of federal law, not state law.  *See* 28 U.S.C. § 2254(d)(1); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Mills v. McKune*, 280 Fed. Appx. 711, 712, 2008 WL 2221849 **1 (10th Cir. May 30, 2008).  Finally, he dismissed claim seven because nothing in the claim raised violations of the United States Constitution or the laws and treaties of the United States.  *See* 28 U.S.C. § 2254(a).  Additionally, I note that the state court record reflects that Mr. Fletcher in fact was sentenced by the Arapahoe County District Court, not by a county court as he alleges in claim seven. *See* R. Vol. 2 at 270-71, Vol. 17.

Judge Brimmer went on to conclude that Mr. Fletcher exhausted his state court remedies for claims two, four, five, six, and eight because he had presented the substance of those claims to the state courts.  Judge Brimmer stated that it was not clear that the state courts had "evenhandedly" applied the procedural bar concerning

timely appeals to Mr. Fletcher's February 19, 2008, Rule 35(c) motion, s*ee Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998), and thus claims two and eight, which were raised in that motion, would be considered on their merits.  Accordingly, Judge Brimmer ordered that claims two, four, five, six, and eight be drawn to a district judge.  I therefore will address the merits of those claims.

## II.  STANDARD OF REVIEW ON MERITS

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495. Additionally, we have recognized that an

> unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Fletcher bears the burden of rebutting the presumption by clear and convincing evidence.

Additionally, I "owe deference to the state court's *result*, even if its reasoning is

not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*  I also grant AEDPA deference to state-court decisions that applied a legal standard either identical to the federal standard or more favorable to the habeas applicant than the federal standard.  *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005).

III.  MERITS OF THE CLAIMS

 A.  Claim Two

 Mr. Fletcher asserts in claim two that his Sixth Amendment right to be tried by an impartial jury was violated by a juror's alleged failure to answer questions truthfully during jury selection.  Specifically, Mr. Fletcher alleges that a juror told his attorney after trial "that he believed that because Mr. Fletcher was a defendant, he was guilty.  And that he did not really believe in the 'presumed innocent until proven guilty' standard." (Application at 14).  This claim was raised in Mr. Fletcher's September 12, 2000, Rule 35(c) motion, which the trial court denied from the bench after an evidentiary hearing prior to sentencing.  Mr. Fletcher did not raise this claim in his direct appeal, but did raise it again in his second Rule 35(c) motion filed February 19, 2008, which the trial

court deemed denied on January 9, 2009, without discussing its merits.  The Court of

Appeals dismissed Mr. Fletcher's appeal of that denial on procedural grounds.

In support of this claim, Mr. Fletcher attaches the Affidavit by Iris Bell in Support

of Motion for New Trial, which was filed in the state trial court.  Ms. Bell, one of Mr.

Fletcher's trial attorneys, states in her affidavit that after the conclusion of the trial, she

recognized one of the jurors while she was in the post office.  She asked if she could

speak with him and he agreed.  The affidavit states that the juror told Ms. Bell that "he

believed Mr. Fletcher was guilty because he was a defendant.  He said something like,

of course he is guilty he is a defendant."  (Application at 15-16).

At the trial court hearing on Mr. Fletcher's Rule 35(c) motion, the juror in question

testified, "I didn't say of course he was guilty because he was a defendant.  I seem to

recall and I think that one would wonder why did - - he is a Defendant, something like

that."  (R. Vol. 5 at 29).  The juror testified that he recalled the trial judge explaining the

presumption of innocence, and that he "was able to agree to that and use my best

efforts in making the right decision."  (R. Vol. 5 at 29).  He further testified that he

understood the judge's instruction to mean that "the burden of proof was on [the

prosecution]," and that he based his decision in the case on that understanding.  (R.

Vol. 5 at 29).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Constitution

amend. VI.  When a party alleges a Sixth Amendment violation based upon alleged

juror dishonesty during voir dire, the two-part test articulated by the Supreme Court in

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), applies.

Under that test,

> a party must first demonstrate that a juror failed to answer
> honestly a material question on *voir dire,* and then further
> show that a correct response would have provided a valid
> basis for a challenge for cause.  The motives for concealing
> information may vary, but only those reasons that affect a
> juror's impartiality can truly be said to affect the fairness of a
> trial.

*Id.* at 555; *see also Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) (applying

*McDonough* test to Sixth Amendment claim in habeas case).

Here, Mr. Fletcher has not demonstrated that the juror in question "failed to

answer honestly a material question on *voir dire*."  At the hearing on Mr. Fletcher's

motion for new trial, the juror denied making the statement reported by Ms. Bell and

testified that, to the contrary, he agreed to apply, and did apply, the presumption of

innocence standard during the trial.  The question of a juror's honesty during voir dire is

a factual determination, *see Gonzales*, 99 F.3d at 985, and I owe deference to the trial

court's determination that a new trial was not warranted based upon the juror's

testimony, even though the trial court did not expressly state its reasoning.  *Aycox*, 196

F.3d at 1177; *see also* R. Vol. 5 at 44.  The trial court was in the best position to assess

the juror's demeanor and credibility.  *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

After a thorough, independent review of the record evidence, I find that the state trial

court's ruling was a reasonable determination of the facts concerning alleged juror

dishonesty in light of the evidence presented.  Because Mr. Fletcher has not satisfied

the first step of the *McDonough* test, habeas relief cannot be granted based on his

allegation of juror dishonesty.  *See Gonzales*, 99 F.3d at 985.

However, Mr. Fletcher's allegation of juror dishonesty also falls within the broader

category of juror bias.[1]  *See id.* ("Cases such as this one - based on allegations of

dishonest voir dire answers - fall within a larger category that comprises all cases of

alleged juror partiality, whatever the source of partiality.").

> [R]egardless of whether a juror's answer is honest or
> dishonest, it remains within a trial court's option, in
> determining whether a jury was biased, to order a post-trial
> hearing at which the movant has the opportunity to
> demonstrate actual bias or, in exceptional circumstances,
> that the facts are such that bias is to be inferred.

*Id.* (quoting *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring)).  On habeas

review, the state court's determination of actual juror bias is a factual one entitled to a

presumption of correctness.  *See Patton v. Yount*, 467 U.S. 1025, 1036-37 (1984).

Although the trial court did not expressly state its reasoning in denying Mr. Fletcher's

motion for new trial, I must defer to its summary ruling, which I find was not an

unreasonable determination of the facts regarding the issue of actual juror bias in light

of the evidence presented.  The juror expressly testified that Ms. Bell's affidavit was

incorrect, and that he applied the presumption of innocence and burden of proof

---

[1]Mr. Fletcher raised the issue of juror bias in connection with his allegation of juror dishonesty in
his Rule 35(c) motion.  *See* R. Vol. 2 at 463.

standards as instructed by the judge.  The evidence reasonably supports a finding of no actual bias.

To the extent that Mr. Fletcher is alleging implied bias in addition to actual bias, I note that the implied bias doctrine is reserved for those " 'extreme' and 'exceptional' circumstances that 'leav[e] serious question whether the trial court . . . subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." *Gonzales*, 99 F.3d at 987 (quoting *Smith v. Phillips*, 455 U.S. 209, 222 & n.* (1982)). "[T]he concept of implied or presumed bias arises from 'situations in which the circumstances point so sharply to bias in a particular juror that even his own denials must be discounted.' " *Id.* (quoting *United States v. Nell*, 526 F.2d 1223, 1229 n.8 (5th Cir. 1976)).  Such situations "might include a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."  *Smith*, 455 U.S. at 222 (O'Connor, J., concurring).  Further, implied bias may be found "on the basis of similarities between the juror's experiences and the facts giving rise to the trial."  *Gonzales*, 99 F.3d at 987. Whether a juror was impliedly biased is a question of law.  *Smith*, 455 U.S. at 222 n.*.

Here, the record contains no evidence of any "extreme" or "exceptional" circumstances which could support the application of the doctrine of implied juror bias. There is no evidence indicating that the juror in question had any undisclosed connection to the facts or parties in the case, and Mr. Fletcher has offered no other

reason why the juror's testimony should be discounted.  The state trial court's order denying Mr. Fletcher's Motion for New Trial thus was not contrary to or an unreasonable application of the clearly established federal law governing implied juror bias.  Habeas relief is not warranted based on any allegation of juror bias.

B.  Claim Four

The Supreme Court has recognized that the Sixth Amendment guarantees the right to an unimpaired jury.  *See Tanner v. U.S.*, 483 U.S. 107, 126-27 (1987).  In his fourth claim, Mr. Fletcher contends that this right was violated when a juror "nodded off" during trial.  This claim was raised in both of Mr. Fletcher's Rule 35(c) motions and on direct appeal.

The affidavit of Iris Bell submitted with the Application states that the juror with whom Ms. Bell spoke in the post office "said he 'nodded off' during the jury trial.  [He] said he felt it was 'okay to nod off, because he saw the judge sleeping and thought if the judge was sleeping, the evidence being presented must not haven been that important to listen to.' "  The affidavit goes on to state that the juror "doesn't know at which stage of the trial he 'nodded off', but he said he nodded off a few times.  He noted that he believed he saw the judge sleeping more than once."  (Application at 13-14).

Although Respondents rely on *Tanner* for the proposition that "a juror who falls asleep during testimony is not per se incompetent,"  (Answer at 13), I decline to adopt such a broad reading of that case.  In *Tanner*, the Supreme Court concluded that the

trial court's refusal, pursuant to Fed. R. Evid. 606(b),[2] to allow juror testimony

concerning whether jurors had been intoxicated and fallen asleep during trial did not

violate the defendant's Sixth Amendment right to an unimpaired jury, because other

aspects of the trial process protect that right, including counsel's and the court's ability

to observe the jury during trial and jurors' ability to report other jurors' inappropriate

behavior. *Tanner*, 483 U.S. at 126-27. Thus, the *Tanner* Court did not hold that jurors'

sleeping during trial is, or is not, per se incompetent under the Sixth Amendment, but,

rather, that a court's refusal to allow juror testimony concerning such behavior does not

violate the Sixth Amendment. The *Tanner* Court "did not mean to be understood as

stating that allegations of juror misconduct made by fellow jurors, in and of themselves,

did not raise Sixth Amendment concerns." *Anderson v. Miller*, 346 F.3d 315, 328 (2d

Cir. 2003). On the contrary, it held that "a party may seek to impeach the verdict by

nonjuror evidence of misconduct." *Id.* (quoting *Tanner*, 483 U.S. at 127). In the present

case, the trial court did allow juror testimony concerning the alleged misconduct, and

*Tanner* provides little assistance.

There appears to be no clearly established Supreme Court case law specifically

addressing whether a juror sleeping during trial constitutes a Sixth Amendment

violation. However, even if the juror's alleged misconduct did violate Mr. Fletcher's

---

[2]Fed. R. Evid. 606(b) provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations," except regarding whether extraneous prejudicial information was considered by the jury, whether outside influences were imposed upon any juror, or whether there was a mistake in entering the verdict on the verdict form.

Sixth Amendment rights, Mr. Fletcher is entitled to habeas relief only if it can be established that the alleged misconduct "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Crittendon v. Ayers*, 624 F.3d 943, 973 (9th Cir. 2010) ("We need not decide here whether clearly established Supreme Court law" holds that jurors' reading and sharing biblical passages violates the Sixth Amendment, because even if it did,  petitioner failed to establish prejudice under *Brecht*.).  Further, this Court has held that a Sixth Amendment claim based upon a juror falling asleep is analogous to juror impartiality claims, in which, "to establish a due process violation, the trial must have resulted in actual prejudice or [given] rise to a presumption of prejudice because it involved 'such a probability that prejudice will result that it is deemed inherently lacking in due process.' " *Compton v. Hartley*, 2009 WL 3052290 (D. Colo. Sept. 22, 2009) (quoting *Estes v. Texas*, 381 U.S. 532, 542 (1965)).

In affirming Mr. Fletcher's conviction on direct appeal, the Colorado Court of Appeals stated that:

> Defendant contends that he was denied his right to a fair and impartial jury because one of the jurors slept during the trial.  We disagree.
>
> Jury misconduct that materially affects the substantial rights of a party so as to prevent a fair and impartial trial may serve as grounds for a new trial. *People v. Evans*, 710 P.2d 1167 (Colo. App. 1985).  To be entitled to a new trial the defendant must demonstrate that he or she has been prejudiced by the misconduct. *People v. Herrera*, 1 P.3d 234 (Colo. App. 1999).  The prejudicial impact of the misconduct is a question of fact to be determined in light of

> all the circumstances at trial. *Herrera*, *supra*. The
> determination of whether the defendant has been prejudiced
> is within the discretion of the trial court, and we will not
> overturn its decision absent an abuse of that discretion.
> *Evans*, *supra*.
>
> Here, defendant filed an affidavit from his trial counsel
> stating that one of the jurors told her that he had nodded off
> during the trial. However, at a hearing on the alleged
> misconduct, the juror testified that the affidavit was
> inaccurate and that he "was not actually sleeping." He
> further testified that he did not believe that he had missed
> any of the evidence presented or any of the arguments
> made by counsel.
>
> We conclude the trial court did not abuse its discretion
> by finding that defendant's substantial rights were not
> prejudiced by the alleged misconduct. *See People v.
> McIntier*, 134 P.3d 467 (Colo. App. 2005) (it is the fact
> finder's function to determine the credibility of the witnesses
> and the weight that should be given to the evidence and to
> resolve conflicts). Thus, the trial court properly denied
> defendant's motion for a new trial on this basis. *See
> Herrera*, *supra*.

*Fletcher*, No. 03CA0182 at 3-4 (Pre-Answer Resp. Ex. E).

Although the Colorado Court of Appeals cited to no U.S. Supreme Court authority

in its analysis, the state standard which it did apply is equally favorable to Mr. Fletcher

as the applicable federal standard, since both require a showing that the defendant was

prejudiced by the alleged juror misconduct. As a result, "neither the reasoning nor the

result" of the Court of Appeals' decision contradicts federal law. *Harris v. Poppell*, 411

F.3d 1189, 1196 (10th Cir. 2005). The state court's application of the relevant standard

to the facts was not unreasonable, since there is no evidence in the record that the

juror's behavior "had substantial and injurious effect or influence in determining the

jury's verdict." *Brecht*, 507 U.S. at 637.  I must presume the trial court's resolution of factual issues concerning whether the juror was in fact sleeping, or had otherwise missed any evidence, to be correct, and Mr. Fletcher has not rebutted that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Accordingly, Mr. Fletcher is not entitled to habeas relief on his fourth claim.

C.  Claim Five

In his fifth claim, Mr. Fletcher asserts that his Sixth Amendment right to an impartial jury was violated when a juror suggested that the other jurors join her in a prayer during deliberations, and then proceeded to pray herself.  This claim was raised in both of Mr. Fletcher's Rule 35(c) motions[3] and on direct appeal.

While there appears to be no clearly established Supreme Court authority holding that jurors' prayers during deliberations constitute a Sixth Amendment violation, even if there were such authority, again, Mr. Fletcher is entitled to habeas relief only if it can be established that the alleged misconduct "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Here, the Colorado Court of Appeals stated:

> Defendant contends the trial court abused its discretion by not ordering a mistrial after learning that one of the jurors said a prayer during deliberations.  We disagree.
> . . .
>
> To decide whether reversal is required we must determine (1) whether the extraneous information was

---

[3]The claim was not expressly included in the written Rule 35(c) motion filed September 12, 2000, but was raised at the hearing on that motion.

improperly before the jury, and (2) based on an objective
"typical juror" standard, whether use of that information
posed the reasonable possibility of prejudice to the
defendant.   [*People v.*] *Harlan*, [*109 P.3d 616 (Colo. 2005)*]
*supra*.  Answering this inquiry presents a mixed question of
law and fact, such that the trial court's historical findings of
fact are given deference, but we review its conclusions of
law de novo.  *Harlan*, *supra*.

In *Harlan*, the defendant moved to vacate his death
sentence based on jury misconduct.  The court found that
during deliberations to determine the defendant's sentence,
one or more jurors brought a Bible, a Bible index, and
handwritten notes containing the location of biblical
passages into the jury room to share with another juror.  The
court further determined that the extraneous materials
contained a passage commanding the death penalty for
murderers and another instructing obedience to civil
authorities.  Finally, the court found that the passages were
pointed out by at least one juror to another juror before the
jury reached its unanimous verdict imposing the death
sentence.  *Harlan, supra.*

The supreme court agreed with the trial court's
determination that the death sentence must be set aside
because the introduction of such information posed a
reasonable possibility of prejudice to the defendant. *Harlan*,
*supra*.  However, the court stated that it did "not hold that an
individual juror may not rely on and discuss with the other
jurors during deliberation his or her religious upbringing,
education, and beliefs" in deciding whether to impose a
sentence of death.   Harlan, *supra*, 109 P.3d at 632.  The
court continued stating that it "expect[s] jurors to bring their
backgrounds and beliefs to bear on their deliberations but to
give ultimate consideration only to the facts admitted and the
law as instructed."   Harlan, *supra*, 109 P.3d at 632.

At the hearing on the motion for a new trial, the
following exchange occurred between the prosecution and
one of the jurors:

Prosecutor: Do you recall an issue coming up with the jury as a whole regarding a prayer?

Juror: One of the jurors wanted to say a prayer in the jury room to give her strength to make a decision, a right decision.

Prosecutor: And so what was done?

Juror: She asked if anybody objected to that.  Nobody did. She gave a prayer to give her strength.  Toward the end of the prayer [she] started talking about Jesus.

Prosecutor: And if I understand you correctly, she wanted everyone to say a prayer together to make the right decision?

Juror: To give her strength to make the right decision.

Subsequently, defense counsel had the following exchange with the same juror:

Defense Counsel: Was one of th[e] two women [who was unable to decide on a verdict] one of the ladies that wanted to say a prayer to give her strength?

Juror: Yes.

Defense Counsel: When that prayer was said was everyone in the jury room praying or just her?  Can you describe to me how that went down?

Juror: She was talking.  Most everybody else was not talking.

Defense Counsel: Okay.  Do you recall anyone else saying anything specifically?

Juror: No.

> Defense Counsel: And you said that . . . at the end of the prayer she started talking about Jesus.  Did that bother you or bother anyone else?
>
> Juror: Bothered me. I'm Jewish.  I don't [sic] believe in separation of church and state.  I found it offensive.
>
> Defense Counsel: Did you say anything at that point or did you just not want to make waves?
>
> Juror: I did not want to make waves.
>
> Here, the juror did not introduce any extraneous materials such as a Bible or written passages from a Bible.  Moreover, the juror said a prayer to help her make the correct decision.  She did not discuss religion in order to influence any other juror's decision.  Thus, we conclude there was not a reasonable possibility that the juror's conduct prejudiced defendant.  *See Harlan*, *supra.*

*Fletcher*, No. 03CA0182 at 10-14 (Pre-Answer Resp. Ex. E).

The state standard applied by the Court of Appeals is equally favorable to Mr. Fletcher as the applicable federal standard, since both standards require a showing that the defendant was prejudiced by the alleged juror misconduct.  As a result, "neither the reasoning nor the result" of the Court of Appeals' decision contradicts federal law.  *Harris*, 411 F.3d at 1196.  Further, the Court of Appeals reasonably applied that standard to the facts, since the record contains no evidence indicating that the juror's prayer at the commencement of deliberations had any "injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  I must presume the state court's resolution of the pertinent factual issues to be correct, and Mr. Fletcher has not rebutted that presumption by clear and convincing evidence.  *See* 28 U.S.C.

§ 2254(e)(1).  Accordingly, Mr. Fletcher is not entitled to habeas relief on his fifth claim.

D.  Claim Six

In his sixth claim, Mr. Fletcher asserts that the trial court committed reversible constitutional error when it allegedly imposed a time deadline for the completion of jury deliberations.  This claim was raised in both of Mr. Fletcher's Rule 35(c) motions and on direct appeal.

Although there appears to be no clearly established Supreme Court authority holding that the imposition of a time deadline on jury deliberations violates a defendant's constitutional rights, the Tenth Circuit has held that "[i]t [i]s impermissibly suggestive and coercive for the Court to place a time fuse on the period of jury deliberation." *Goff v. United States*, 446 F.2d 623, 626 (10th Cir. 1971).

Even if there were clearly established Supreme Court authority governing this issue, the Colorado Court of Appeals found that no time deadline had, in fact, been imposed on jury deliberations.  The court stated:

> Defendant contends that the trial court violated his right to a fair and impartial jury by imposing a time deadline for completing jury deliberations.  We disagree.

> Defendants have a constitutional right to a fair and impartial jury.  U.S. Const. amends. VI & XIV; Colo. Const. art. II, §§ 16, 25.  However, trial courts have broad discretion in conducting and scheduling trials.  *People v. Baird*, 66 P.3d 183 (Colo. App. 2002).

> In *Allen v. People*, 660 P.2d 896 (Colo. 1983), the court held that giving a "timefuse" instruction to the jury violated a defendant's right to a fair and impartial jury.  A "timefuse" instruction is one that "grants the jury a time limit

to finish its deliberations, at the end of which the jury will be dismissed." *Allen*, *supra*, 660 P.2d at 898 n.1.

Here, the jury began deliberating on a Friday at 4:35 p.m. Shortly after 5 p.m., the court called the jury in and stated:

> Members of the jury, the Court notes that it's 10 minutes after five after the normal business day. And as that is the case I need to ask whether it is the jury's pleasure because they are very close to reaching a verdict to continue this evening or if they are more distant from a verdict, to indicate that it's time to recess for the evening and bring you back Monday morning.

The jury foreman then responded, "[W]e feel we are fairly close to completing and would like to finish this evening." The jury returned with a verdict at 5:47 p.m.

We conclude the court's instruction was not a "timefuse" instruction. *See Allen*, *supra*. The court did not give the jury a time limit within which to reach a verdict. To the contrary, the court informed the jury that, if necessary, it would be allowed to continue its deliberations on Monday morning.

Accordingly, defendant's right to a fair and impartial jury was not violated. *See Kelley v. Colo. Mobile Home Licensing Bd.*, 662 P.2d 199, 200 (Colo. App. 1983)("the mere fact that the jurors were given the opportunity to continue deliberations to a time certain and then to return, if necessary, for further service on Monday does not constitute coercion").

*Fletcher*, No. 03CA0182 at 9-10 (Pre-Answer Resp. Ex. E). I must presume that the

Court of Appeals' factual determination that the trial court imposed no time deadline is

correct, and Mr. Fletcher has failed to rebut that presumption with clear and convincing

evidence.  After a thorough, independent review of the record I have located no

evidence indicating that the trial court placed any time limit on the jury's deliberations.

To the contrary, the record indicates that the trial judge made clear to the jurors that

they were free to continue their deliberations after the weekend.  The juror who testified

at the hearing on the Motion for New Trial stated that he felt that he had enough time to

deliberate and that if the jury had needed more time, they could have continued

deliberations that night or the following Monday.  (R. Vol. 5 at 32).  Mr. Fletcher is not

entitled to habeas relief on his sixth claim.

     E.  Claim Eight

     In his eighth claim, Mr. Fletcher asserts that his counsel provided ineffective

assistance at trial.  Specifically, he alleges that "[c]ounsel was ineffective for not

advancing a reasonable doubt defense," and that counsel "did not point out the

inconsistencies in witness testimony; did not point out the entire lack of evidence; [and]

did not point out the weakness in witness credibility . . . ." (Application at 26).  This

claim was raised in Mr. Fletcher's second Rule 35(c) motion, which was denied by the

trial court on the merits, but without any discussion of the court's reasoning.  The Court

of Appeals dismissed Mr. Fletcher's appeal of that denial on procedural grounds.

Because the trial court ruled on the merits, I owe deference to that result, even though

the court did not expressly state its reasoning.  *See Aycox*, 196 F.3d at 1177.

Accordingly, I must uphold the trial court's summary decision "unless [my] independent

review of the record and pertinent federal law persuades [me] that its result contravenes

or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on his claim that his trial counsel's assistance was constitutionally ineffective, Mr. Fletcher must show that: (1) counsel's legal representation fell below an objective standard of reasonableness, and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Id.* at 693. In evaluating prejudice, I consider the totality of the evidence before the jury. *Id.* at 695. I need not address both prongs of the *Strickland* inquiry if I determine that Mr. Fletcher's claim fails on one. *Id.* at 697.

Mr. Fletcher cites to *Fisher v. Gibson*, 282 F.3d 1283 (10th Cir. 2002), which relied upon *United States v. Cronic*, 466 U.S. 648 (1984), for the proposition that "[c]ounsel has a duty, at the minimum, to hold the state 'to its heavy burden to provide guilt beyond a reasonable doubt.' " *Fisher*, 282 F.3d at 1306 (quoting *Cronic*, 466 U.S. at 657 n.19). Under *Cronic*, "if counsel entirely fails to subject the prosecution's case to

meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable," and no specific showing of prejudice is required. *Cronic*, 466 U.S. at 659. However, "this exception to *Strickland* will apply only in the narrowest and rarest of circumstances," *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010), when the attorney "fail[s] to oppose the prosecution throughout the [trial] as a whole," and not where counsel fails to oppose the prosecution only "at specific points." *Bell v. Cone*, 535 U.S. 685, 697 (2002). I have reviewed carefully the entire record including the trial transcript, and conclude that Mr. Fletcher's counsel did not fail to hold the prosecution to its burden of proving guilt beyond a reasonable doubt or otherwise "entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The presumption of prejudice under *Cronic* does not apply here.

Mr. Fletcher alleges generally that his trial counsel failed to point out inconsistencies in witness testimony, without identifying any particular testimony or alleged inconsistencies. A defendant asserting ineffective assistance of counsel must "identify the particular acts and omissions of counsel" which tend to prove that the representation fell below an objective standard of reasonableness. *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991). Mr. Fletcher has not identified any occasions on which his counsel failed to point out testimonial inconsistencies which would allow me to evaluate his claim. *See United States v. Bell*, 44 Fed. Appx. 418, 422, (10th Cir. Aug. 21, 2002) (unpublished). His broad assertion is insufficient to

27

support habeas relief.  My independent review of the trial transcript has revealed no instances in which Mr. Fletcher's counsel's representation fell below an objective standard of reasonableness based on any failure to point out inconsistencies in witness testimony.  The allegation fails under the first prong of *Strickland*.

Mr. Fletcher also asserts that his counsel "did not point out the entire lack of evidence."  Mr. Fletcher does not elaborate on this assertion or provide any supporting examples.  After carefully reviewing the trial record, it is clear to me that there was not an "entire lack of evidence" against Mr. Fletcher at trial.  There was, in fact, a great deal of evidence at trial supporting a guilty verdict against Mr. Fletcher, including the testimony of eyewitnesses and an accomplice, Mr. Fletcher's own statements to police, and substantial physical evidence.  Mr. Fletcher's counsel's performance did not fall below an objective standard of reasonableness due to any failure to "point out the entire lack of evidence."  The allegation fails under the first prong of *Strickland*.

Lastly, Mr. Fletcher contends that his counsel "did not point out the weakness in witness credibility."  He references the testimony of prosecution witness Steven Yarber, who testified that he was one of the three men involved in the robbery and shooting and described in detail Mr. Fletcher's participation in the crimes.  Mr. Fletcher states that Mr. Yarber "was facing 200 to 300 years, and . . . the State offered him 8yrs. for his testimony; so you do the math!"  (Application at 26).  In fact, Mr. Fletcher's counsel engaged in a lengthy cross-examination of Mr. Yarber during which he obtained Mr. Yarber's admission that he had lied to the police about his prior knowledge of and

agreement to the robbery plan.  (R. Vol. 11 at 82-84).  Counsel's cross-examination also

elicited numerous inconsistent statements by Mr. Yarber.  (*See e.g.* R. Vol. 11 at 85-

90).  Counsel further obtained Mr. Yarber's testimony that he had known that he was

facing 93 to 288 years imprisonment and had "struck a deal" after writing a letter to the

prosecutor offering to help in any way he could, ultimately reaching a plea agreement

upon which he was sentenced to only eight years.  (R. Vol. 11 at 101-107).  Finally, Mr.

Fletcher's counsel specifically argued to the jury in his closing that Mr. Yarber had

testified untruthfully against Mr. Fletcher in order to have his sentence reduced.  (R. Vol.

19 at 91-92).  Mr. Fletcher's contention that his counsel failed to point out weaknesses

in Mr. Yarber's credibility is not supported by the record.  The allegation fails under the

first prong of *Strickland*.

For the reasons set forth above, the state trial court's order denying Mr.

Fletcher's second Rule 35(c) motion, which included his claim of ineffective assistance

of counsel, did not contravene or unreasonably apply *Cronic* and *Strickland*, and was

not based on an unreasonable determination of the facts in light of the evidence

presented.  Therefore, I find and conclude that Mr. Fletcher is not entitled to habeas

relief on his eighth claim.

Accordingly, it is

ORDERED that Applicant Charles William Fletcher III's [Amended] Application for

a Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Doc. No. 4) is **DENIED** and the

action is **DISMISSED WITH PREJUDICE**.  It is

**FURTHER ORDERED** that no certificate of appealability will issue because Mr.

Fletcher has not made a substantial showing of the denial of a constitutional right.

Dated:  May 16, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge